11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Harry K. Myers

Appellant

Vs.                   No.
11-99-00309-CV  --  Appeal from Dallas County

Emory Walker - (IRA) Merrill Lynch

Appellee

 

This appeal involves a claim for fraud arising
from Harry K. Myers=
breach of a settlement agreement.  After
a bench trial, the trial court entered judgment against Myers for actual
damages of $510,000 and exemplary damages of $660,000.  We affirm. 


                                                                Background
Facts








Emory Walker, a pharmacist, had a qualified
individual retirement account with Merrill Lynch.  At the solicitation of Myers, Walker took $200,000, which was
approximately two-thirds of his total savings, from his IRA and invested in
Insured Medical Claims, Ltd. (IMC). 
With this investment, AEmory
Walker - (IRA) Merrill Lynch@[1]
became a limited partner of IMC. 
According to the partnership agreement, IMC was in the business of
buying insured, medical accounts receivables at a discount and then collecting
them.  The medical receivables were to
be purchased in units of no more than $5,000. 
Myers controlled IMC and ran the business.  Rather than purchasing insured receivables, Myers diverted most
of the money invested by IMC=s
limited partners to various entities in which Myers also had an interest and
which were indebted to one of IMC=s
general partners, United Mercantile Capital Corporation (UMCC).  UMCC, which was also controlled by Myers,
was licensed by the Small Business Administration (SBA) as a small business
investment company.  Because of UMCC=s regulatory violations,
the SBA called its loans.  The diverted
monies were ostensibly used to pay the debts owed to UMCC by the various other
entities.  Before investing in IMC,
Walker had rejected Myers=
request to borrow money in order to repay a loan to UMCC. 

After discovering that IMC was not purchasing receivables,
Walker sought the return of his investment from IMC in accordance with the
partnership agreement.  When IMC did not
comply, Walker sued Myers and IMC for breach of contract, breach of fiduciary
duties, and fraud (the 1995 lawsuit). 
Walker also filed a proof of claim in receivership proceedings that had
been initiated by the United States Small Business Administration against UMCC.


During court-ordered mediation of the 1995
lawsuit, Myers insisted that Walker withdraw the proof of claim.  Myers and Walker entered into a settlement
agreement whereby Myers would pay a total of $110,000 in cash and would
transfer stock worth $10,000.  The cash
was to be paid in two initial installments of $25,000 each and two subsequent
installments of $30,000 each.  The debt
was to be secured by 300,000 shares of stock owned by Myers.  Pursuant to the settlement agreement, Walker
dismissed the 1995 lawsuit.  Myers
subsequently made both $25,000 payments, and Walker withdrew the proof of
claim.  Myers then breached the
agreement by failing to deliver the stock for security, by failing to transfer
the $10,000 worth of stock, and by failing to make either of the $30,000
installments.  Walker attempted to
modify or re-file his proof of claim but was precluded from doing so because of
the expiration of statutory time limits. 
Walker sued Myers, asserting claims for breach of the settlement
agreement and for fraud.  The trial
court entered judgment and awarded damages on the fraud claim only.  Myers appeals from that judgment. 

                                                                 Issues
for Review








Myers presents 21 issues for appellate
review.  In Issues Nos. 1 and 2, Myers
contends that the original petition does not support a claim for fraud and that
the trial court erred by allowing Walker to file an amended petition.  In Issues Nos. 4, 5, and 6, Myers argues
that the evidence is legally and factually insufficient to show that Myers had
no intent to perform under the settlement agreement, that Myers= representations were
material, and that Walker relied on Myers=
representations.  In Issues Nos. 3, 8,
9, 10, 11, 12, and 13, Myers challenges the trial court=s award of actual damages.  In Issues Nos. 7, 14, 15, 16, 17, 18, and
19, Myers challenges the trial court=s
award of exemplary damages.  In Issues
Nos. 20 and 21, Myers complains that the trial court violated the statutory
provisions of TEX. CIV. PRAC. & REM. CODE ANN. ' 41.008 (Vernon 1997) in its award of
damages.  

                                                        Walker=s Pleadings on Fraud

In the first issue, Myers argues that the trial
court erred by permitting Walker to amend the petition after the trial court
had heard the evidence in this case but before it signed the judgment.  In the second issue, Myers contends that the
judgment for fraud is erroneous because the fraud allegations in the original
petition failed to allege Myers=
intent not to perform.  We
disagree.  

A trial court shall permit a party to amend its
pleadings before judgment is entered unless (1) the opposing party presents
evidence of surprise or prejudice or (2) the amendment asserts a new cause of
action or defense and is, thus, prejudicial on its face.  Greenhalgh v. Service Lloyds Insurance
Company, 787 S.W.2d 938, 939 (Tex.1990); see TEX.R.CIV.P. 63 & 66.  In a case where the trial amendment is not
mandatory, the decision to permit or deny the amendment rests within the sound
discretion of the trial court and may be reversed only upon the showing of a
clear abuse of discretion.  State Bar of
Texas v. Kilpatrick, 874 S.W.2d 656, 658 (Tex.), cert. den=d, 512 U.S. 1236
(1994).  

Walker=s
original and amended petitions specifically alleged AFraud@
as the ASECOND CAUSE
OF ACTION.@  The petitions stated:

18.  At or
about the time that Defendant Myers entered into the Settlement Agreement, he represented,
assured, and promised Plaintiff, both through the promises and
covenants contained in the Settlement Agreement and otherwise, that
Defendant Myers would comply with and perform each of the terms of the
agreement and that Plaintiff would not be required to institute any action or
undertake any proceedings to enforce the terms thereof.  While Plaintiff was understandably reluctant
to enter into a settlement that required payments over time, yet required him
to release the Prior Litigation and the UMCC Proof of Claim, Defendant Myers
represented to Plaintiff that the releases were essential to assist UMCC and
Defendant and to ensure that adequate resources would be available to perform
under the Settlement Agreement.

 

19.  The
foregoing representations, including but not limited to the promises
contained in the Settlement Agreement, were material, were made by
Defendant with the intention that Plaintiff rely thereon and were relied upon
by Plaintiff in entering into the Settlement Agreement.

 








20.                           
Notwithstanding the foregoing, the above-referenced
representations were false when made, were never intended by Defendant to be
performed and Plaintiff (sic) [Defendant] knew, or reasonably should have
known, of the falsity thereof. 
Defendant made each of the misrepresentations to wrongfully induce
Plaintiff to execute the Settlement Agreement and to release the claims
asserted in the Prior Litigation and the UMCC Proof of Claim.  (Emphasis added)

 

The underlined language was not included in the original petition
but was contained in the amended petition. 


We hold that the trial court did not abuse its
discretion by allowing Walker leave to file the amended petition.  The amended petition did not assert a new cause
of action.  Walker=s original petition clearly
stated that his second cause of action was for fraud and that the fraud was
committed when Myers fraudulently induced Walker to enter into the settlement
agreement by making material misrepresentations.  Myers opposed the amendment and attempted to show that he would
be prejudiced.  The trial court rejected
Myers=
opposition.  Because the amended
petition did not materially alter Walker=s
claims, we hold that the trial court did not abuse its discretion in allowing
the amendment.  Consequently, the first
and second issues for review are overruled. 


                                                                Evidence
of Fraud

In the fourth, fifth, and sixth issues, Myers
argues that there is no evidence and that the evidence is insufficient to
support the following findings:  at the
time he entered into the settlement agreement, Myers did not intend to perform
his obligations thereunder; Walker relied upon Myers= representations; and the representations were
material.  In addressing a no-evidence
point, we must view the evidence in the record in a light which tends to
support the finding of the disputed fact and disregard all evidence and
inferences to the contrary.  If there is
any evidence of probative force to support the finding, the no-evidence point
must be overruled.  Weirich v. Weirich,
833 S.W.2d 942, 945 (Tex.1992); In re King's Estate, 244 S.W.2d 660 (Tex.1951);
see also Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711
(Tex.1997), cert. den=d,
523 U.S. 1119 (1998).  In order to
determine if the evidence is factually sufficient, we must review all of the
evidence and determine whether the challenged finding is so against the great
weight and preponderance of the evidence as to be manifestly unjust.  Pool v. Ford Motor Company, 715 S.W.2d 629
(Tex.1986); In re King's Estate, supra. 









In general, fraud consists of the following
elements:  a material misrepresentation
that was false, that was either known to be false when made or was asserted
without knowledge of its truth, that was intended to be acted upon, that was
relied upon, and that caused injury. 
Formosa Plastics Corporation USA v. Presidio Engineers and Contractors,
Inc., 960 S.W.2d 41, 47 (Tex.1998); Sears, Roebuck & Company v. Meadows,
877 S.W.2d 281, 282 (Tex.1994); DeSantis v. Wackenhut Corporation, 793 S.W.2d
670, 688 (Tex.1990), cert. den=d,
498 U.S. 1048 (1991).  A promise of
future performance constitutes an actionable misrepresentation if the promise
was made with no intention of performing at the time it was made.  Formosa Plastics Corporation USA v. Presidio
Engineers and Contractors, Inc., supra at 48. 
Although a party's intent is determined at the time the party made the
representation, it may be inferred from the party's actions after the
representation is made.  Spoljaric v.
Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex.1986).  The intent to defraud generally must be proven by circumstantial
evidence.  Spoljaric v. Percival Tours,
Inc., supra at 435.  Although the mere
failure to perform a contract is not evidence of fraud, even slight
circumstantial evidence of fraud is sufficient to support a finding of
fraudulent intent when considered with the breach of a promise to perform.  Spoljaric v. Percival Tours, Inc., supra;
see also Formosa Plastics Corporation USA v. Presidio Engineers and
Contractors, Inc., supra.  








In this case, Walker presented evidence that Myers
was an attorney and that he had intentionally and deceitfully avoided service
of process in the 1995 lawsuit.  Walker
also showed that Myers had insisted that he withdraw the UMCC proof of claim as
a requirement to settle the 1995 lawsuit. 
Walker testified that the UMCC release was important to Myers and that
Myers wanted it done immediately. 
Walker=s proof
of claim was the only one that had been filed in the UMCC receivership.  Walker also testified that, after reaching
an agreement during mediation whereby he would withdraw the proof of claim
after Myers made the second payment, Myers attempted to change the terms of the
agreement.  He sent Walker a written
settlement agreement that required Walker to withdraw the proof of claim before
Myers made any payments.  After Walker
rejected the new terms, a compromise settlement agreement was signed that
reflected the mediated terms.  Shortly
after delivery of the final draft, Myers again requested that Walker execute a
withdrawal of the proof of claim.  Myers
failed to deliver the $10,000 worth of stock that was due about 5 months after
the final agreement was signed.  Myers
also failed to tender the 300,000 shares of stock to secure his debt.  The settlement agreement stated that these
shares were owned by Myers and that Myers was to deliver them to Walker within
60 days of the settlement agreement. 
Myers never delivered the stock certificates, and he subsequently failed
to make either of the $30,000 installments. 
Walker testified that he relied upon Myers=
representations.  Walker also testified
that the conditions of the settlement agreement with Myers were important to
his decision to dismiss the 1995 lawsuit and to withdraw the proof of claim.  

We hold that the evidence is both legally and
factually sufficient to support the challenged findings on the issues of
intent, reliance, and materiality. 
Issues Nos. 4, 5, and 6 are overruled. 


                                                                  Actual
Damages

In Issues Nos. 3, 10, 11, 12, and 13, Myers
contends that Walker was not entitled to damages for mental anguish or
emotional distress and that Walker should have been limited to loss-of-benefit
damages of $70,000 because he did not request consequential or special damages
in his pleadings, because no pleading supported the award of mental anguish
damages, because mental anguish damages are not permissible in a tort suit
related to the breach of a contract, because the evidence is legally and
factually insufficient to support the award of $360,000 in damages for mental
anguish, and because the named plaintiff is a non-person who cannot suffer
mental anguish.  In Issues Nos. 8 and 9,
Walker contends that the evidence is legally and factually insufficient to
support the award of $510,000 in actual damages.  








Walker pleaded that he had been damaged as a
result of Myers= fraud
and that the amount of damages was within the jurisdictional limits of the
trial court.  Myers correctly asserts
that Walker=s
pleadings did not contain a claim for mental anguish or for special
damages.  See TEX.R.CIV.P. 56 (claims
for special damages must be stated in pleadings).  The record shows, however, that the trial court did not expressly
include a recovery for mental anguish. 
The trial court awarded actual damages in the lump sum of $510,000 in
the judgment and stated in a finding of fact that Walker had Asuffered direct and
economic damages of at least $510,000.@  Mental anguish was not mentioned in the
judgment or the findings of fact. 
Further, actual damages for fraud, including either the
benefit-of-the-bargain measure or the out-of-pocket measure, need not be
explicitly pleaded because they are direct, general damages from the fraud,
rather than special damages.  Green v.
Allied Interests, Inc., 963 S.W.2d 205, 208 (Tex.App. - Austin 1998, pet=n den=d).  Although Walker=s pleadings were inartful, we find that they
were sufficient to support the trial court=s
findings in this case.  

The record does show, however, that the trial
court allowed Walker to testify over objection about his mental anguish.  Walker testified that he had suffered mental
anguish because of Myers=
actions and that he was requesting $360,000 in damages for his mental anguish,
emotional distress, and pain and suffering. 
Walker testified that he was financially unable to retire because of
Myers= fraudulent
acts.  Walker, who was almost 73 years
old at the time of trial, testified that his hearing was impaired which made it
difficult to hear prescriptions over the phone, that he had to stand on his
feet hours a day, and that the situation had caused hardships in his life and
in his relationship with his wife (who was Aviolently
opposed@ to the
investment Walker made in IMC).  Walker
also requested $150,000 ($200,000 initial investment less the $50,000 received
from Myers) in damages for his actual economic loss.  The trial court awarded damages in the amount requested by Walker
in his testimony, but the court awarded actual damages in one lump sum and did
not expressly award any damages for mental anguish or emotional distress.  

Neither the trial court=s judgment nor the findings of fact reflect
that any of the damages were awarded to Walker for mental anguish; therefore,
the issues related to the award of mental anguish damages are overruled.  Furthermore, we note that tort damages may be
recovered in a cause of action for fraudulent inducement even though the fraud
is related to the breach of a contract. 
Formosa Plastics Corporation USA v. Presidio Engineers and Contractors,
Inc., supra at 46-47.  We also note that
Myers did not preserve a complaint regarding the capacity of the named
plaintiff, a non-person IRA account that was itself not a legal entity but
clearly referred to Walker.  See
TEX.R.CIV.P. 28 & 93.  We overrule
Issues Nos. 3, 10, 11, 12, and 13.  








In order to address Myers= legal and factual sufficiency challenges in
Issues Nos. 8 and 9, we will apply the well-recognized standards of review
stated previously in this opinion.[2]  Texas recognizes two measures of direct
damages for fraud:  the
benefit-of-the-bargain measure and the out-of-pocket measure.  Benefit-of-the-bargain damages allow
recovery for the difference between the value as represented and the value
received.  Out-of-pocket damages allow recovery
for the actual injury suffered, which is measured by the difference between the
value of that which the injured party has parted with and the value actually
received.  Fortune Production Co. v.
Conoco, Inc., 52 S.W.3d 671, 681 (Tex.2000); Formosa Plastics Corporation USA
v. Presidio Engineers and Contractors, Inc., supra at 49.  

In this case, the out-of-pocket damages actually
suffered by Walker include the value of what he parted with in consideration
for the settlement agreement.  See
Samedan Oil Corporation v. Intrastate Gas Gathering, Inc., No. 12-99-00242-CV,
2001 WL 1153443 (Tex.App. - Tyler Sept. 28, 2001, no pet=n h.). 
Walker parted with his causes of action in the 1995 lawsuit and the UMCC
proof of claim.  In addition to his
testimony regarding mental anguish damages of $360,000 and the loss of $150,000
from his IRA account, Walker also testified regarding the damages that he had
requested in his 1995 lawsuit and in the UMCC proof of claim.  In the 1995 lawsuit, Walker sought actual
damages Ain excess of
$800,000" for breach of fiduciary duties and exemplary damages of at least
$600,000.  In that lawsuit, Walker also
sought actual damages of Aat
least $200,000" for breach of contract and for fraud.  In the proof of claim, Walker sought
$200,000 in actual damages and $600,000 in exemplary damages.  As proof of the value of the 1995 lawsuit
and the proof of claim, Walker offered testimony and documentary evidence
tending to prove the claims he made in those suits.  Walker further testified that he had lost investment returns of
at least $10,000 per year.  Walker
actually received $50,000 from Myers pursuant to the settlement agreement.  We hold that the evidence is both legally
and factually sufficient to show that Walker=s
out-of-pocket damages were at least $510,000. 
Issues Nos. 8 and 9 are overruled. 


                                                                 Punitive
Damages








In Issues Nos. 7, 14, and 19, Myers contends that
the award of exemplary damages is inappropriate because Walker did not prove a
distinct tortious injury, because the award for actual damages is
inappropriate, and because Walker failed to show actual malice.  Exemplary damages may be awarded if the
claimant proves by clear and convincing evidence that the harm for which he
seeks recovery of exemplary damages resulted from fraud or malice.  TEX. CIV. PRAC. & REM. CODE ANN. ' 41.003(a)(1) (Vernon
1997).  Walker pleaded and proved that
Myers fraudulently induced him to enter into the settlement agreement.  This type of claim supports the award of
tort damages, including exemplary damages, regardless of whether the injury is
distinct from any permissible contractual damages.  Formosa Plastics Corporation USA v. Presidio Engineers and
Contractors, Inc., supra at 46-47. 
Furthermore, we have upheld the award of actual damages in this
case.  Thus, we overrule Issues Nos. 7,
14, and 19.  

In Issues Nos. 15, 16, 17, and 18, Myers
challenges the legal and factual sufficiency of the evidence in support of the
exemplary damages and asserts that the exemplary-damage award is not reasonably
proportional to the actual-damage award. 
We disagree.  The trier of fact
has discretion in determining whether to award exemplary damages.  TEX. CIV. PRAC. & REM. CODE ANN. ' 41.010 (Vernon 1997).  We must review the award of exemplary
damages with careful scrutiny to ensure that the award is supported by the
evidence, and we may vacate the award or suggest a remittitur only if the award
is "so factually insufficient or so against the great weight and
preponderance of the evidence as to be manifestly unjust."  Transportation Insurance Company v. Moriel,
879 S.W.2d 10, 30 (Tex.1994).  In order
to determine if the exemplary damages awarded were reasonable, we consider
factors such as the following:  (1) the
nature of the wrong, (2) the character of the conduct involved, (3) the degree
of culpability of the wrongdoer, (4) the situation and sensibilities of the
parties concerned, and (5) the extent to which such conduct offends a public
sense of justice and propriety.  Alamo
National Bank v. Kraus, 616 S.W.2d 908, 910 (Tex.1981). 








In this case, Walker brought forth evidence
showing the nature of the wrong.  Myers
fraudulently induced Walker to enter into a settlement agreement.  In doing so, Walker was precluded from
litigating the causes of action asserted in the 1995 lawsuit and the UMCC proof
of claim.  Walker showed the culpable
character of Myers=
conduct and the continuing pattern of that conduct.  Myers, an attorney, took advantage of Walker, leaving him
financially unable to retire at the age of 73, and then fraudulently induced
Walker to settle his claims against Myers. 
Myers ceased performing under the settlement agreement as soon as Walker
dismissed the 1995 lawsuit and withdrew the UMCC proof of claim that was so
important to Myers.  We hold that this
evidence is sufficient to support the award of exemplary damages in the amount
of $660,000, that the award is not excessive, that it is reasonable, and that
the trial court did not abuse its discretion by awarding exemplary damages in
this case.  Issues Nos. 15, 16, 17, and
18 are overruled.  

                                                                   Section
41.008

In the final two issues, Myers complains that the
trial court violated Section 41.008 by failing to separate economic damages
from compensatory damages and by awarding punitive damages that exceeded the
statutory cap.  We disagree.  Section 41.008 provides in relevant
part:  

(a) In an action in which a claimant seeks
recovery of exemplary damages, the trier of fact shall determine the amount of
economic damages separately from the amount of other compensatory damages.

 

(b) Exemplary damages awarded against a defendant
may not exceed an amount equal to the greater of:

 

(1)(A) two times the amount of economic
damages;  plus

     (B) an
amount equal to any noneconomic damages found by the jury, not to exceed
$750,000;  or

 

(2) $200,000.

 

(c) Subsection (b) does not apply to a cause of
action against a defendant from whom a plaintiff seeks recovery of exemplary
damages based on conduct described as a felony in the following sections of the
Penal Code if, except for Sections 49.07 and 49.08, the conduct was committed
knowingly or intentionally:

 

(10) Section 32.45 (misapplication of fiduciary
property or property of financial institution);

 

(11) Section 32.46 (securing execution of document
by deception).

 

Myers=
fraudulent conduct fell within the exceptions enumerated in Section
41.008(c).  See Konkel v. Otwell, No.
11-00-00292-CV, 2001 WL 1298738 (Tex.App. - Eastland Oct. 25, 2001, no pet=n h.).  Therefore, the statutory cap under Section
41.008(b) does not apply in this case. 
Because the cap does not apply, there was no error in failing to
separate the economic damages from the other compensatory damages (if any) as
required by Section 41.008(a).  Issues
Nos. 20 and 21 are overruled.  








The judgment of the trial court is affirmed.  

 

W. G. ARNOT, III

CHIEF JUSTICE

 

November 8, 2001

Publish.  See TEX.R.APP.P.
47.3(b).

Panel
consists of:  Arnot, C.J., and 

Wright,
J., and McCall, J. 











     [1]Although AEmory
Walker - (IRA) Merrill Lynch@ was the named
limited partner and the named plaintiff in the lawsuits, we will use the term
Walker to refer to the plaintiff/appellee because Walker=s IRA account at Merrill Lynch is not a legal entity
and because Myers did not complain at trial about the plaintiff=s name or capacity. 
See TEX.R.CIV.P. 28 & 93.  





     [2]For a no-evidence point, we must view the evidence in
the record in a light which tends to support the finding of the disputed fact
and disregard all evidence and inferences to the contrary.  If there is any evidence of probative force
to support the finding, the no-evidence point must be overruled.  Weirich v. Weirich, supra; In re King's
Estate, supra; see also Merrell Dow Pharmaceuticals, Inc. v. Havner,
supra.  For a factual sufficiency
challenge, we must review all of the evidence and determine whether the
challenged finding is so against the great weight and preponderance of the
evidence as to be manifestly unjust. 
Pool v. Ford Motor Company, supra; In re King's Estate, supra.